IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ROBERT W. SESSIONS**, | Case No. 3:23-cv-1108-SI |
| Plaintiff, | **ORDER** |
| v. | |
| **DAWN M. HUNT,** *et al*., | |
| Defendants. | |

**Michael H. Simon, District Judge.**

      Robert W. Sessions, representing himself, is proceeding in this case on a First Amended Complaint narrowed by the Court after *sua sponte* review. Plaintiff asserts claims against Defendants Londa Nelson, an employee with the District Attorney's Office, and Victoria Walton, an employee in Columbia County's Child Support Services division, for violating the Driver's Privacy Protection Act (DPPA). Plaintiff also asserts a claim against Columbia County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for failure to train Nelson and Walton on how to handle confidential information. Plaintiff alleges that his confidential information protected under the DPPA was retrieved from Oregon's law enforcement data systems (LEDS) and improperly displayed in an area accessible to the public.

Before the Court are Plaintiff's motion for sanctions and renewed motion to compel, and Defendants' motion for summary judgment. Defendants argue that Nelson and Walton did not violate the DPPA because: (1) their alleged conduct did not qualify as a "knowing disclosure" under the statute; (2) even their conduct did qualify as a disclosure, it was an authorized use under the statute; and (3) even if Nelson and Walton violated the statute, they have qualified immunity. For the following reasons, the Court agrees with Defendants that the alleged use was authorized under the DPPA and Nelson and Walton have qualified immunity. The Court thus grants Defendants' motion for summary judgment, denies Plaintiff's motion for sanctions, and denies Plaintiff's motion to compel as moot.

**A.  Legal Standards**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "If the moving party meets its initial burden, the non-moving party

must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B. Evidentiary Objections**

Plaintiff raises many evidentiary objections to Defendants' motion, including that the evidence should not be considered because it was not included in Defendants' initial disclosures. Many of the evidentiary "objections" are actually disputes regarding the facts.

For Plaintiff's objection on failure to comply with initial disclosures, much of those objections are to deposition testimony by Plaintiff. Plaintiff was disclosed as a witness in Defendants' initial disclosures and these objections are not well taken. There is one document submitted by Defendants that was produced outside of Defendants' initial disclosures (an email exchange to Walton from an assistant district attorney in Louisiana, Ashley Smith). Even assuming this document was not otherwise made known to Plaintiff in supplemental initial

disclosures or discovery responses,[1] it was specifically discussed during Plaintiff's deposition testimony and thus no evidentiary sanction is warranted. *Cf. Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*, 501 F. Supp. 3d 886, 896 (E.D. Cal. 2020) (facts discussed in deposition testimony and expert report sufficient to "make known" a disclosure for purposes of Rule 26(e)(1)(A) and obviate the need for supplemental initial disclosures); *Mack v. Cal. Dep't of Corr. & Rehab.*, 790 F. App'x 846, 848 (9th Cir. 2019) (documents produced that reveal a witness has pertinent knowledge sufficient disclosure).

As for Plaintiff's other objections, at summary judgment, the Court may consider "evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (noting that at summary judgment a court does "not focus on the admissibility of the evidence's form. [The Court] instead focus[es] on the admissibility of its contents"). "Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011); *cf.* Fed. R. Civ. P. 56(c)(2) (permitting a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). Plaintiff does not object under Rule 56(c)(2) that the material cited *cannot* be presented in a form that *would be* admissible at trial. Additionally, objections on relevance grounds "are inappropriate, because the Court must determine whether a fact is relevant and material as part of 'the summary judgment standard itself.'" *Sidhu v. State of Cal.*, 2021 WL 411149, at *7 (E.D. Cal. Feb. 5, 2021) (quoting *Burch v. Regents of the Univ. of*

---

[1] In responding to Plaintiff's evidentiary objections Defendants generally reference their supplemental disclosures and discovery responses without specifically identifying this document.

*Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)). The Court will not individually resolve Plaintiff's voluminous evidentiary objections. The Court, however, only considers relevant, appropriate, factual contentions in resolving the pending motion.[2]

### C. Motion for Summary Judgment

#### 1. Timing

Plaintiff argues that Defendants' motion is untimely because summary judgment motions must be brought 30 days after discovery closes under Rule 56(b) of the Federal Rules of Civil Procedure. Plaintiff misunderstands the Rule—the deadline for motions, unless otherwise ordered, is *no later than* 30 days after discovery closes. Defendants' motion is timely. The Court now turns to the merits of Defendants' motion.

#### 2. Authorized Conduct

Defendants argue that even if Walton and Nelson's posting of Plaintiff's picture and information can be considered a disclosure under the DPPA, it was a permitted use under the statute. Because the Court agrees with this argument, the Court declines to reach Defendants first argument, that Walton and Nelson's conduct was not a "knowing disclosure" under the DPPA.

The DPPA only excludes disclosures "for a purpose not permitted under this chapter." 18 U.S.C. § 2724(a). One purpose expressly permitted under the DPPA is "use by any government agency, including any court or law enforcement agency, in carrying out its functions." 18 U.S.C. § 2721(b)(1).

It is undisputed that Plaintiff had been involved with child custody issues for years before the first alleged disclosure in September 2021. It also is undisputed that he owed some amount of child support at least by 2021. Plaintiff also does not dispute that his former attorney Trisha

---

[2] The parties discuss many extraneous facts in their briefing that the Court disregards in resolving Defendants' pending motion.

Webb *reported* to Walton on September 3, 2021, that Plaintiff threatened to kill Webb, and then when Webb asked for clarification Plaintiff denied making that threat. Plaintiff currently denies threatening Ms. Webb, but he does not dispute that Ms. Webb reported to Walton that Plaintiff had made such a threat. Walton immediately reported this threat to the constituent liaison office of the Child Support Services Division, along with reporting a history of contentious dealings with Plaintiff. ECF 36-1.

On September 7, 2021, the constituent liaison office notified Walton that the situation was unusual because the report was not a direct threat to Walton but given Plaintiff's "somewhat erratic past and present behavior," constituent services would have an investigator from the criminal justice department handle the report. ECF 4 at 15. The threat assessment law enforcement investigator, Rich Austria, responded on September 8, 2021, explaining:

> We can understand the concerns that Ms. Walton is feeling. At this point with Mr. Sessions living in Louisiana, and the comments weren't [sic] not directed at Ms. Walton, we don't have enough to substantiate a criminal threat. If there are more details that would substantiate a crime, DA Auxier could move forward with criminal charges. I would have the DA's Office develop a safety plan at the office should Mr. Sessions show up there. They may also want to let the local law enforcement agency know what is going on.

*Id.* at 16. He offered to discuss the issue further with Walton if she wanted.

Walton was given a copy of Plaintiff's Department of Motor Vehicles (DMV) photograph from a Columbia County Sheriff's Office Detective, with the comment that it was for law enforcement or official use only and with instructions not to disseminate it. *Id.* at 15. Walton posted that photograph of Plaintiff at her workstation at that time to help identify him if he came to the office.

On March 24, 2022, Walton received an email from Ashley Smith, an assistant district attorney in Louisiana. Ms. Smith recited how Plaintiff "used profanity" and threatened to "blow

his head off' and "our heads off." ECF 36-2 at 1. She asked whether Plaintiff had "a reported history of violence." *Id.* Walton forwarded this email to the District Attorney's office and constituent services.

In March 2022, after Ms. Smith's email was forwarded, the District Attorney's office met to update the safety plan about Plaintiff. As part of the safety plan, it was decided that Nelson would post Plaintiff's photo because her workstation was the most likely to interact with Plaintiff if he came to that office. After the meeting, Nelson received Plaintiff's DMV photo and personal information. She posted it in an internal conspicuous location to help identify him.

Viewing the facts in the light most favorable to Sessions and even assuming Walton and Nelson's postings of his photograph was a disclosure of information under the DPPA, Plaintiff fails to provide evidence showing a genuine issue of fact that Walston and Nelson violated the DPPA. Under Oregon law, the functions of the District Attorney's Office and the Division of Child Support include obtaining information about parents who owe child support and enforcing the liability of those parents to support children. *See, e.g.*, Or. Rev. Stat. §§ 25.080, 412.094(1).

Walton was acting in her official capacity as an employee of the Child Support Services when she posted Plaintiff's picture as part of the initial safety plan in September 2021. She posted Plaintiff's picture to help identify him in case he showed up, so she could obtain help if needed. A permitted use under the DPPA is "not required to be immediate or certain." *Senne v. Vill. of Palatine, Ill.*, 784 F.3d 444, 447 (7th Cir. 2015). A permitted use may never even come to fruition. *Id.*

Posting Plaintiff's picture as part of a safety plan was part of the function of the Child Support Services. The agency's role includes obtaining information about Plaintiff and enforcing Plaintiff's child support obligations. The agency needed to perform those functions in a safe manner under the safety plan implemented at the time. Walton was carrying out the function of

PAGE 7 – ORDER

an agency of the government, including keeping agency personnel and others safe and secure, protecting government property, ensuring the agency could function with minimal disturbance and pursue its primary mission, and preserving the peace. *Cf. McKee v. Schemmel*, 2018 WL 6676334, at *2, *5 (N.D. Ohio Dec. 19, 2018) (concluding that campus police officers "executed . . . duties in preserving the peace and protecting persons and property" in sharing information about a person who was a perceived safety risk with "23 private police officers, 19 security guards, the Director of Parking and Building Security, the Vice President for Campus Services, and one IT employee" and thus the conduct was permitted by the DPPA).

Similarly, Nelson was acting in her official capacity as an employee of the District Attorney's Office when she posted Plaintiff's information as part of the updated safety plan in March 2022. She was carrying out similar functions of the agency as Walton had six months earlier. Because Nelson and Walton used Plaintiff's information as government agents carrying out agency functions, a use permitted under the DPPA, Plaintiff fails to raise a genuine dispute of material fact showing that they violated the statute. *See McKee*, 2018 WL 6676334, at *5. The Court thus grants Defendants' summary judgment motion on this ground.

### 3. Qualified Immunity

As a separate basis for granting summary judgment, the Court concludes that Walton and Nelson are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "Whether qualified immunity can be invoked turns on the objective legal reasonableness of the official's acts. And reasonableness of official action, in turn, must be assessed in light of the legal rules

that were clearly established at the time the action was taken." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (cleaned up).

In *Saucier v. Katz*, the Supreme Court outlined a two-step process for determining the applicability of the qualified immunity doctrine. 533 U.S. 194, 200 (2001). The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id*. The second step is to determine "whether the right was clearly established." *Id*. The constitutional issue, however, need not be addressed first in every case. *Pearson*, 555 U.S. at 227. Regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a government official's conduct violates clearly established law, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Abbasi*, 582 U.S. at 152 (quotation marks omitted). To be clearly established, "[i]t is not necessary . . . that the very action in question has previously been held unlawful. That is, an officer might lose qualified immunity even if there is no reported case directly on point. But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent." *Id.* (cleaned up). "The 'clearly established' requirement 'operates to ensure that before they are subject to suit, [government officials] are on notice their conduct is unlawful.'" *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (alteration in *Eng*). Thus, the key inquiry in determining whether an government official has qualified immunity is whether the official had "fair warning" that his conduct was unconstitutional. *Hope*, 536 U.S. at 741; *see also Saucier*, 533 U.S. at 202 (noting that the law need not be a "precise formulation of the standard" as long as "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair

way from the facts presented in the case at hand"); *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013) ("Rather, the relevant question is whether 'the state of the law at the time gives officials fair warning that their conduct is unconstitutional.'" (quoting *Bull v. City & County of San Francisco*, 595 F.3d 964, 1003 (9th Cir. 2010) (en banc)). A court in this circuit first looks to binding precedent from the Supreme Court or the Ninth Circuit. *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004). After that, "in the absence of binding precedent, [courts] look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Id.* (quotation marks omitted).

The plaintiff bears the burden of making a showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). When considering whether qualified immunity applies, the court must resolve all factual disputes in favor of the party asserting the injury. *Ellins*, 710 F.3d at 1064.

The Court already has determined that Walton and Nelson did not violate the DPPA, and thus they are entitled to qualified immunity at the first *Saucier* step. Plaintiff, however, also fails to meet his burden at the second *Saucier* step to show that the law was clearly established.

Plaintiff points to no case law in arguing that qualified immunity applies. He cites only the DPPA. This is insufficient to defend against an argument of qualified immunity because the point is that a government official must understand that the statute *applies to the specific facts* at issue. If simply pointing to the law or constitutional provision that is alleged to have been violated could defeat a claim of qualified immunity, there would be no immunity. Such circular reasoning fails.

Plaintiff provides no case, nor could the Court locate one, finding it unlawful for government officials to post LEDS, DMV, or other confidential information as part of a safety

plan to help identify a person who was believed to be a potential safety risk.[3] And although Plaintiff disputes the validity of that belief, it is undisputed that based on the *reports* received by Defendants, they believed Plaintiff potentially to be a safety risk. It also is undisputed that Walton and Nelson posted Plaintiff's picture in areas that were not directed to the public, although, viewing the facts in the light most favorable to Plaintiff, members of the public could access where the pictures were posted under certain circumstances. This is not a case where Walton and Nelson knowingly posted Plaintiff's purportedly protected information on a public internet site or in a broadly accessible public area. *Cf. Senne*, 784 F.3d at 443-44 (distinguishing placing private information on a parking ticket that is placed face down on windshield of a vehicle parked on a public street with placing "that information in a newspaper, on a billboard, or on the police department's website"). The Court therefore also grants summary judgment on the claims asserted against Walton and Nelson on the separate and independent grounds that they are entitled to qualified immunity.

### 4. Failure to Train

Defendants also move for summary judgment against Plaintiff's failure to train claim asserted against Columbia County. Defendants argue that because there is no underlying violation of the DPPA by Watson or Nelson, then Plaintiff's failure to train claim must fail. The Court agrees. A failure to train claim requires an underlying violation. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). It generally also requires a "pattern" of similar violations. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). Here, the Court has concluded that there is no underlying violation of law, and Plaintiff also fails to raise a genuine

---

[3] The closest case is the *McKee* case, cited by Defendants, which found similar conduct to be lawful under the DPPA.

issue of fact that there was any similar pattern of violations. The Court grants Defendants' motion for summary judgment on Plaintiff's failure to train claim.

### D. Motion for Sanctions

Plaintiff moves for sanctions, arguing that Defendants' counsel did not properly sign discovery responses and disclosures because the signature block did not contain the attorney's address. The Court rejects this argument. The rule requires that discovery requests, responses, and disclosures be signed, and that the submissions "state" the signer's address, email, and telephone number. Fed. R. Civ. P. 26(g)(1). The latter information, however, does not have to be in the signature block. Defendants' counsel's contact information was on the first page, and signature was on the last page. Defendants' counsel therefore complied with Rule 26(g)(1) of the Federal Rules of Civil Procedure.

Plaintiff next argues that Defendants were "evasive" in their discovery answers and initial disclosures, citing Rule 37(a)(4). Rule 37(a), however, describes motions to compel, not motions for sanctions. Plaintiff also attaches documents to his motion that he argues were "provided by Defendants" relating to the training of Nelson and Watson. He contends this evidence should be "thrown out" because there is no "signature and certification." Defendants, however, have not submitted this evidence and do not rely on these documents in moving for summary judgment. It appears that these are documents that were produced by Columbia County in the course of this litigation, based on the Bates numbers. In any event, there is no pending use for this evidence for the Court to consider the sanction of exclusion. Nor does Plaintiff's argument that each of these documents need to be "signed and certified" apply—documents produced in discovery are not signed by counsel. The Court rejects this argument.

Finally, Plaintiff asserts that Defendants have failed to "confer, certify, sign, and supplement their disclosures and productions." Plaintiff provides no argument or discussion

PAGE 12 – ORDER

supporting this assertion. The Court has already rejected Plaintiff's contention regarding the signature and certification point. The Court rejects this unsupported statement as a basis for sanctions, particularly given the additional discovery that the Court is aware of through the discovery motions in this case and Plaintiff's evidentiary objections based on Defendants' production of more documents beyond their initial disclosures. The additional production of documents contradicts Plaintiff's contention that Defendants' have not supplemented their initial production.

**E.  Motion to Compel**

Plaintiff renews a portion of his motion to compel, as allowed by the Court. Because the Court grants Defendants' motion for summary judgment, however, this motion is now moot.

**F.  Conclusion**

The Court GRANTS Defendants' motion for summary judgment, ECF 34. The Court DENIES Plaintiff's motion for sanctions, ECF 50. The Court DENIES AS MOOT Plaintiff's motion to compel, ECF 44.

**IT IS SO ORDERED.**

DATED this 24th day of July, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge